UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA GLEICH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 05 C 1415 |
| | ) |
| TASTEFULLY SIMPLE, INC., | ) Judge George M. Marovich |
| KIMBERLY LEOPARDO, LAURA | ) |
| DAVIS, LISA MACIEL, JANE DOES | ) |
| and JOHN DOES 1-10, and | ) |
| XYZ CORPORATIONS 1-10, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cynthia Gleich ("Gleich") filed a five-count complaint against defendants Tastefully Simple, Inc. ("Tastefully Simple"), Kimberly Leopardo ("Leopardo"), Laura Davis ("Davis"), Lisa Maciel ("Maciel") and multiple John and Jane Does and XYZ Corporations. Defendants Tastefully Simple, Leopardo, Davis and Maciel move pursuant to Rules 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing the complaint.[1] For the reasons set forth below, the Court grants the motion and dismisses without prejudice all of plaintiff's claims.

**I.    Background**

For purposes of defendants' 12(b)(6) motion, the Court takes as true the allegations in the complaint. The Court also considers the exhibits attached to plaintiff's complaint (including, among others, Exhibit 1: Tastefully Simple Consultant Agreement and Exhibit 5: Tastefully

---

[1]The John and Jane Does and XYZ Corporation defendants have not been served and, thus, have not answered or moved for dismissal.

Simple Policies Effective May 1, 2004). *See* Fed.R.Civ.P. 10(c). For purposes of the 12(b)(3) motion, on the other hand, the Court is "not obligated to limit its consideration to the pleadings." *Continental Cas. Co. v. American Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

Tastefully Simple is a corporation that sells food products. The complaint does not say what food products Tastefully Simple sells, but the what is less important to the case than the how. Tastefully Simple sells through a network of independent contractors, whom Tastefully Simple calls "consultants." Each consultant is expected to sell products via parties. A consultant is required to buy products (worth at least $1600 per year) from Tastefully Simple and, upon resale, earns a commission. A consultant can also earn a commission on the sales made by "downline" consultants, i.e., additional consultants recruited to Tastefully Simple and sponsored by the original consultant. Thus, as is typical of such pyramid marketing structures, one's position in the pyramid affects one's earnings, and one generally prefers to be higher rather than lower on the pyramid. It is this unsurprising jockeying for position on the pyramid that brings these parties (including two members of the same family who are on opposite sides of the litigation) to this Court.

The first of the individual parties to join the pyramid was defendant Leopardo. Leopardo recruited her sister-in-law, plaintiff Gleich, to Tastefully Simple and is listed as the "sponsoring consultant" on the Tastefully Simple Consultant Agreement Gleich signed.

Gleich signed a Tastefully Simple Consultant Agreement (the "Agreement") on or about October 31, 1999. By signing the Agreement, Gleich agreed, among other things: (1) "to conduct in-person informational presentations for individual consumers and/or groups through home parties or business/local/club organization presentations as [her] main source of sales, recruiting and promotion"; (2) "to sell Tastefully Simple products to ultimate consumers and not to sell or display those products or conduct parties or Tastefully Simple business through the Internet,

retail stores or service establishments"; and (3) "to present Tastefully Simple career information to prospective Tastefully Simple consultants in a truthful and sincere manner and to accept the training and ongoing support responsibilities of a sponsoring consultant as stated in the current Tastefully Simple career plan." The Agreement provides that "if [Gleich] do[es] not order at least $400 retail in commissionable products every calendar quarter, [she] will no longer be considered an active consultant and [she] will lose all benefits associated with being an active consultant, product discounts, company correspondence, commissions, etc. [She would] then be considered a 'deactivated' consultant." Under the Agreement, Tastefully Simple retained the right to terminate the Agreement with thirty days' notice. Finally, the Agreement contains a forum selection clause, which states:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Minnesota and any and all actions/arbitrations shall be venued in Douglas County, State of Minnesota.

(Agreement ¶¶ 2, 5, 7, 15).

The Agreement does not set forth how consultants are compensated with respect to their downline consultants. That information is set out in Exhibit 5 to plaintiff's complaint, which Exhibit is entitled Tastefully Simple Policies Effective May 1, 2004 ("Tastefully Simple Policies/Consultant Guide".[2] Depending on one's level in the pyramid (i.e., how many and what type of consultants one recruits below her), sponsoring consultants can earn 5% "Leadership Cheques" for first-line "commissionable" orders, 3% for second-line and 1% for third-line. For example, when a consultant is promoted to Team Manager, which requires the consultant to "recruit and sponsor six first-line" consultants, she earns a 5% Leadership Cheque for first-line orders and a 3% Leadership Cheque on second-line orders. A Senior Team Mentor (who must

---

[2] The footer on each page of Exhibit 5 reads "Consultant Guide . . . Policy 2004 . . . Revised 10/1/04".

have recruited 15 first-line consultants, five of whom must be Senior Team Managers) makes 5% on first-line, 3% on second-line and 1% on third-line sales.

During the course of the five years after Gleich signed the Agreement, Gleich was successful at developing a network of consultants below her. As she recruited and sponsored additional consultants, she was promoted to Team Leader, Team Manager, Senior Team Manager, Team Mentor and, finally, to Senior Team Mentor. By then, she had 550 consultants below her, including defendants Davis and Maciel.

As a sponsoring consultant, Gleich had certain responsibilities to her downline consultants. Gleich attached to her complaint a letter from Tastefully Simple's Consultant Support Lead, which letter stated that a consultant's "contractual obligations" are set out in the Consultant Guide. That document, it seems, outlines "Sponsor Requirements." To use Tastefully Simple's new verb, a sponsoring consultant is to TRIM (i.e., train, reward, inform and motivate) her downline consultants. The document also states that "[i]f a sponsor is failing to TRIM (Train, Recognize, Inform and Motivate) their [sic] first-line consultants, the sponsor may lose their [sic] downline and/or Tastefully Simple may terminate their [sic] Consultant Agreement." According to Gleich's complaint, she met her training obligations by, among other things, coaching and training her consultants, hiring motivational speakers, sending letters of recognition, conducting regular meetings, maintaining a team website, purchasing gifts to reward consultants and sending newsletters.

Gleich's team was successful at selling Tastefully Simple's products. The team was responsible for nearly $4,000,000 in annual sales. As of 2004, Tastefully Simple was paying Gleich commissions of between $7,000 and $8,000 per month. Jill Blashak, Tastefully Simple's CEO, praised Gleich for having "truly dazzled everyone."

Plaintiff alleges that things changed for the worse in October 2004, when Tastefully Simple bumped two of plaintiff's first-line consultants (Davis and Maciel) up to plaintiff's sponsoring consultant, Leopardo. Thus, as of October 2004, Davis and Maciel (and everyone below them) were considered to be below Leopardo (and no longer below Gleich) in the pyramid. (It is unclear from the complaint why Tastefully Simple bumped Davis and Maciel up to Leopardo, but a reasonable inference from the pleadings is that Davis and Maciel requested the bump-up on the grounds that Gleich was not adequately training them.) The immediate effect of the change was a 40% reduction in both the number of consultants below Gleich and Gleich's commissions. Gleich alleges that Tastefully Simple has also threatened to bump up to Leopardo a few of Gleich's other consultants, including Andrea Parham and Nancy Thrasher.

Based in part on these allegations, Gleich asserts five claims. In Count I, Gleich asserts a breach of contract claim against Tastefully Simple. Gleich alleges that Tastefully Simple contracted (both orally and in the Tastefully Simple Policies/Consultant Guide) to provide her residual income and bonuses based on the success of her downline network and that Tastefully Simple breached the contract by bumping Davis and Maciel up to Leopardo. In Count II, plaintiff asserts a claim for tortious interference. Here, she alleges, among other things, that Tastefully Simple conspired with Leopardo, Davis and Maciel to interfere with the "contractual network of downline distributor organizations and relationships with and for the benefit of the Plaintiff[.]" In Count III, Gleich alleges that the defendants engaged in a civil conspiracy to destroy Gleich's business. In Count IV, Gleich alleges that Maciel and Davis defamed her orally and in writing by stating that Gleich had failed to "train, recognize, inform, and mentor" them. Finally, in Count V, Gleich asserts a claim for intentional infliction of emotional and physical distress and alleges that "[t]he wrongful 'bump-ups' have caused much emotional distress to Ms. Gleich[.]"

## II. Standard on a motion to dismiss

Dismissal is appropriate under Rule 12(b)(3) where a claim is covered by a valid forum selection clause that selects a venue elsewhere. *Continental Cas. Co.*, 417 F.3d at 733.

The Court may dismiss claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). On a motion to dismiss, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. Discussion

### A. Standing

Before turning to the merits of the motion to dismiss, the Court first considers standing. The Court must always assure itself that it has jurisdiction. *Weaver v. Hollywood Casino*, 255 F.3d 379, 381 (7th Cir. 2001). A party seeking to avail itself of a federal court's jurisdiction bears the burden of establishing jurisdiction "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Here at the pleadings stage, plaintiff must allege facts sufficient to establish that the Court has jurisdiction over the case.

Plaintiff alleges that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. "For almost two centuries the diversity statute has been interpreted to require 'complete'

diversity of citizenship (meaning that none of the parties on either side of the litigation may be a citizen of a state of which a party on the other side is a citizen)." *Howell v. Tribune Entertainment Co.*, 106 F.3d 215, 217 (7th Cir. 1997) (citations omitted). Thus, it was incumbent on plaintiff, a citizen of Georgia, to include allegations as to the citizenship of every defendant. Plaintiff has done so with respect to defendants Tastefully Simple (Minnesota), Leopardo (Illinois), Davis (Massachusetts) and Maciel (Massachusetts).

Plaintiff fails, however, to include any citizenship allegations with respect to Jane and John Does 1-10 and XYZ Corporations 1-10. As the Seventh Circuit has explained, "because the existence of diversity jurisdiction cannot be determined without knowledge of every defendant's place of citizenship, "John Doe" defendants are not permitted in federal diversity suits." *Howell*, 106 F.3d at 218. These defendants, however, appear to be the sort of nominal defendants that the Court should disregard rather than dismissing the entire case for want of jurisdiction. *See Navarro Savings Assoc. v. Lee*, 446 U.S. 458, 461 (1980) ("a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy"); *United States Fire Ins. Co., Inc.*, 851 F.2d 957, 959 n. 3 (7th Cir. 1988) ("The John Doe defendants are nominal parties to this action whose addition was a mere gesture; USFIC does not seek relief against or in favor of these defendants. More importantly, they have no legal interest in the action.") (internal citations omitted). Here, the Doe defendants and XYZ Corporations are nominal because none of plaintiff's claims are directed toward them. Nowhere in the complaint does plaintiff assert any allegations as to their conduct or seek any relief from those parties. The Court will consider jurisdiction without reference to the Jane and John Does and without reference to the XYZ Corporations. Accordingly, the Court concludes that it has diversity jurisdiction over this case.

As for the Jane and John Does and the XYZ Corporations, the Court has no reason to think these parties were served with the complaint within 120 days after it was filed as is required by Rule 4(m) of the Federal Rules of Civil Procedure. In addition, plaintiff fails to state any claims against those defendants. Accordingly, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court dismisses the Jane and John Does and XYZ Corporation defendants. This dismissal is without prejudice to plaintiff's right to file within 60 days an amended complaint naming those defendants (though any such amended complaint must also include allegations with respect to the citizenship of any such defendants).

B.  **Defendants' Rule 12(b)(3) motion**

The Court next considers defendants' motion under Fed.R.Civ.P. 12(b)(3) to dismiss plaintiff's claims for improper venue. In support of its motion, defendants argue that plaintiff's claims against them are covered by a forum selection clause that requires the claims to be decided elsewhere. Specifically, the Agreement states:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Minnesota and any and all actions/arbitrations shall be venued in Douglas County, State of Minnesota.

(Agreement ¶ 15).

The Court first considers what law to apply. Plaintiff cites to state law (both Illinois and Minnesota cases), while defendants argue that federal law applies. The Seventh Circuit has never decided whether state or federal law should apply in this situation and instead has applied the law the parties have agreed upon. *See Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 374 (7th Cir. 1990) ("we need not decide this, since the litigants are, within limits not exceeded here, permitted to designate what law shall control their case."); *Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 251-252 (7th Cir. 1996). When it most recently considered the

question of whether a case was appropriately dismissed under 12(b)(3) in the face of a forum selection clause, the Seventh Circuit applied the law of the forum state, reasoning that the parties had not objected to the district court's application of that law and had not pointed out any conflicts between that and any other potentially-applicable law. *Continental Casualty Co. v. American Nat'l Ins. Co.*, 417 F.3d 727, 734 n.8 (7th Cir. 2005).

Because the parties in this case do not agree, the Court must decide what law to apply. The analysis begins with the concept that in diversity cases, courts generally apply federal procedural law and state substantive law. *Erie v. Tompkins*, 304 U.S. 64 (1938). Venue is generally thought of as procedural, while contract interpretation is generally considered substantive. In *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988), the Supreme Court considered whether a court should apply state or federal law when considering a motion to transfer venue brought pursuant to 28 U.S.C. § 1404(a). The Supreme Court concluded that federal law applied because the Court was applying a federal statute and the forum selection clause was but one of many factors to be considered when determining whether to transfer the case pursuant to that federal statute. *Stewart*, 487 U.S. at 32.

Here, though, the issue is not whether a federal statute allows the Court to transfer the case. Rather, the issue is whether the parties entered an enforceable contract providing for the claims at issue to be brought in a different forum. That issue sounds a lot like a substantive contract law issue that would ordinarily be governed by state law. Furthermore, it makes little sense to construe the remains of a contract under state law and then construe the forum selection clause under federal law. *Cf. Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d at 374 ("it can be argued that as the rest of the contract in which a forum selection clause is found will be

interpreted under the principles of interpretation followed by the sate whose law governs the contract, so should that clause be"). Finally, it could lead to troubling results for a litigant if a federal court applying federal law (which is generally favorable to forum selection clauses) dismissed his suit on the grounds that a forum selection clause required him to file his suit in a state antagonistic to forum selection clauses, and, after the federal court dismissed the case, the state court refused to allow venue in its court. Better to apply the state law in the first instance.

For these reasons, the Court reaches the same conclusion as another court within this district and concludes that when considering whether to enforce a forum selection clause by granting a Rule 12(b)(3) motion to dismiss for improper venue, a court should apply state law. *See also Faur v. Sirius Int'l Ins. Corp.*, 391 F. Supp.2d 650 (N.D. Ill. 2005). In this case, the appropriate state law is the law of Minnesota because the paragraph of the Agreement that contains the forum selection clause also states that it will be "governed by and construed in accordance with the laws of the State of Minnesota[.]" (Agreement ¶ 15).

Minnesota law provides:

when parties to a contract agree that actions arising from that contract will be brought in a particular forum, that agreement should be given effect unless it is shown by the party seeking to avoid the agreement that to do so would be unfair or unreasonable.

*Hauenstein & Bermeister, Inc. v. Met-Fab Industries, Inc.*, 320 N.W. 2d 886, 890 (Minn. 1982). According to the Supreme Court of Minnesota, a forum selection clause could be unreasonable where "(1) the chosen forum is a seriously inconvenient place for trial; (2) the choice of forum agreement is one of adhesion; and (3) the agreement is otherwise unreasonable." *Hauenstein*, 320 N.W. 2d at 890.

Plaintiff argues that the forum selection clause is unreasonable for two reasons: the forum is inconvenient and the forum selection clause is part of a contract of adhesion. With respect to convenience, plaintiff would like the Court to consider such factors as the proximity of the venue to the plaintiff and witnesses, the location of the courthouse relative to the airport and the number of attorneys nearby. Such things are not considered a serious inconvenience. *Alpha Systems Integration, Inc. v. Silicon Graphics, Inc.*, 646 N.W. 2d 904, 909 (Minn. Ct. App. 2002). Rather, "enforcement of a forum-selection clause creates a serious inconvenience if it would result in two lawsuits involving similar claims or issues being tried in separate courts." *Alpha Systems*, 646 N.W. 2d at 909. Thus, the presence of additional parties (to whom, as is discussed below, the forum selection clause does not apply) might be a reason not to enforce the forum selection clause. In fact, plaintiff argues that she will be inconvenienced if Tastefully Simple is dismissed because she will be forced to litigate in two venues (here against the individual defendants and in Douglas County, Minnesota against Tastefully Simple). The Court is not convinced that plaintiff should be allowed to get around the forum selection clause so easily by creating for herself the problem of multiple cases in multiple venues. The plaintiff does not argue that she would be unable to obtain jurisdiction over the other defendants in Douglas County (and the Court does not perceive a legal or factual difficulty). To the extent Gleich is concerned about convenience, Gleich should file all of her claims in Douglas County, Minnesota. No serious inconvenience makes it unreasonable to enforce the forum selection clause.

The Court is also not convinced that the forum selection clause is unreasonable for being part of a contract of adhesion. True, the Agreement is part of a pre-printed, boilerplate form. But such agreements make it easier to conduct transactions, especially in a business (such as this one)

that relies on the constant influx of additional sales consultants. This Agreement is not a contract of adhesion because Gleich could have contracted with another company to sell its food products or to sell some other type of product. *See Alpha Systems*, 646 N.W. 2d at 909-910 (not a contract of adhesion where the signor has the opportunity to contract for the product or service elsewhere). Thus, the Court will enforce the forum selection clause.

### 1. Applicability of the forum selection clause to plaintiff's claims against Tastefully Simple

One might question, however, whether plaintiff brings any claims covered by the forum selection clause. The language of the forum selection clause does not explicitly apply to claims beyond the Agreement, and plaintiff's breach of contract claim seems to be based not on the Agreement itself but on oral promises Tastefully Simple made to plaintiff and on contractual obligations arising from the Tastefully Simple Policies/Consultant Guide. Minnesota precedent, however, goes the other way. In *Alpha Systems*, the court enforced a forum selection clause in one agreement with respect to disputes over another agreement. The first agreement authorized the plaintiff to sell defendant's product and contained a forum selection clause. A second agreement, which gave the plaintiff additional rights, did not contain a forum selection clause. Although the plaintiff was suing for breach of the second agreement, the court still enforced the forum selection clause in the first agreement on the theory that plaintiff could have no rights under the second agreement without the initial right to sell the product, which arose from the first agreement (the agreement containing the forum selection clause). *Alpha Systems*, 646 N.W. 2d at 908. Similarly, but for the Agreement Gleich signed, she would not have had any of the rights outlined in the Tastefully Simple Policies/Consultant Guide that she seeks to enforce. Applying

Minnesota law, the Court concludes that plaintiff's breach of contract claim is covered by the forum selection clause. Accordingly, plaintiff's Count I for breach of contract is dismissed without prejudice.

Tastefully Simple also seeks to apply the forum selection clause to the rest of plaintiff's claims against it. Gleich also asserts against Tastefully Simple claims for tortious interference (Count II), civil conspiracy (Count III) and intentional infliction of mental and physical distress (Count V). Again, one wonders why a forum selection clause that does not explicitly cover "all disputes between the parties" should be interpreted to cover tort claims. But in *Alpha Systems*, the Minnesota court concluded that tort claims (including claims for tortious interference and unjust enrichment) arose out of plaintiff's right to sell defendant's products and, hence, were covered by the forum selection clause. *Alpha Systems*, 646 N.W. 2d at 908. As in *Alpha Systems*, Gleich's tort claims against Tastefully Simple all arise out of her right to sell Tastefully Simple's products and her status as a Tastefully Simple consultant. In Counts II and III, Gleich's claim is that defendant interfered with and attempted to destroy Gleich's downline network of distributors. Similarly, in Count V, Gleich alleges that defendant intentionally inflicted emotional distress on Gleich by bumping up Davis and Maciel to Leopardo's downline. Because, under Minnesota law, Gleich's tort claims are covered by the forum selection clause in the Agreement, the Court dismisses without prejudice Gleich's claims against Tastefully Simple.

### 2. Applicability of the forum selection clause to Plaintiff's claims against the individual defendants.

Defendants Leopardo, Davis and Maciel also seek dismissal of Gleich's claims against them on the basis of the forum selection clause. Leopardo, Davis and Maciel, however, are not

parties to the Agreement between Gleich and Tastefully Simple, which Agreement contains the forum selection clause. In considering whether to allow these individual defendants to enforce a forum selection clause in an agreement to which they are not parties, the Court will look to Minnesota law on third-party enforcement of contracts. *See Continental Casualty Co. v. American Nat'l Ins. Co.*, 417 F.3d 727, 734 (7th Cir. 2005).[3] Under Minnesota law, *intended* third-party beneficiaries of contracts may enforce contracts, but *incidental* beneficiaries may not. *Hickman v. Safeco Ins. Co. of Amer.*, 695 N.W. 2d 365, 369 (Minn. 2005) ("Generally, a stranger to a contract does not have rights under the contract, but an exception exists if a third party is an intended beneficiary of the contract."). A third-party is an intended beneficiary if either the agreement obligates a party to compensate the third-party or the circumstances indicate that the promissee intends the third party to benefit. *Hickman*, 695 N.W. 2d at 369. Nothing in the Agreement or the circumstances surrounding the Agreement indicates that Leopardo, Maciel or Davis are intended to benefit from Gleich's Agreement with Tastefully Simple. It matters not that Leopardo, Maciel and Davis may have signed their own consultant agreements with Tastefully Simple. Although that would mean Leopardo, Maciel and Davis would have to file any claims against Tastefully Simple in Douglas County, it would not mean that Gleich must file in Douglas County her claims again Leopardo, Maciel and Davis. Accordingly, the Court will not allow those individual defendants to enforce the forum selection clause.

---

[3]Defendants imply in their brief that Minnesota courts will apply forum selection clauses to third parties if the claims are intertwined with the claims subject to the forum selection clause. Not so. Rather, Minnesota courts use that factor in considering whether a forum selection clause is unreasonable and, hence, unenforceable. The Court has already rejected the argument that the forum selection clause in this case is unreasonable because it applies to only some of the parties to the case.

### C. Defendants' Rule 12(b)(6) motion

In the alternative, the individual defendants argue that Gleich's claims against them should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

Defendants argue that Minnesota law should apply given that the Agreement states that the Agreement shall be construed in accordance with Minnesota law. But an agreement to construe the terms of a contract under Minnesota law is not an agreement that *all* claims between those two parties and tort claims against third parties should be decided under Minnesota law. The plaintiff makes no argument with respect to the appropriate choice of law. (In fact, the plaintiff makes no argument that her claims should survive a 12(b)(6) motion. Plaintiff merely asks that she be allowed to re-plead her claims should the Court choose to dismiss them.)

In a diversity case, a federal court applies the choice of law rules of the forum state (here, Illinois). *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004). With respect to tort claims, Illinois courts apply the law of "the state in which the tort occurred unless another state has a more significant relationship to the occurrence or the parties." *Reid v. Norfolk & Western Railway Co.*, 157 F.3d 1106, 1110 n.3 (7th Cir. 1998). In this case, the allegations suggest that the alleged torts probably occurred in Minnesota. In any case, the allegations also suggest that Minnesota has the most significant relationship to the parties since Minnesota is the site of the company (Tastefully Simple) with whom each of the parties has signed a consultant agreement. Thus, the Court will apply Minnesota law to plaintiff's tort claims.[4]

---

[4] This decision is based on the pleadings. The evidence put forth at subsequent stages of the litigation might suggest that it is more appropriate to apply another state's law.

### 1. Gleich's defamation claim

In Count IV, Gleich alleges that defendants Davis and Maciel defamed her by "publish[ing] knowingly false statements of and concerning Plaintiff and her business, both orally and in writing, on a repeated basis stating Plaintiff has violated Defendant corporation's Policies by failing to 'train, recognize, inform, and mentor' the distributors in her downline business organization[.]" (Complt. ¶ 27). Defendants complain that plaintiff's allegations do not provide the defamatory statements verbatim.

Even though federal courts require only notice pleading, a plaintiff must still plead the substantive requirements of the state law. *See Morris v. Household Mortgage Services, Inc.*, 350 F. Supp.2d 786, 788 (N.D. Ill. 2004). Under Minnesota law, a defamation claim must be set out verbatim. *Glenn v. Daddy Rocks, Inc.*, 171 F. Supp.2d 943 (D. Minn. 2001) (citing *Moreno v. Crookston Times Printing Co.*, 610 N.W. 2d 321, 326 (Minn. 2000)). Although Gleich provides the substance of the alleged defamatory statements, she includes no verbatim statements. Accordingly, the Court dismisses without prejudice Count IV for failure to state a claim.

### 2. Gleich's claim for intentional infliction of emotional distress

In Count V, Gleich alleges that the "'bump-ups' have caused much emotional distress to Ms. Gleich[.]" (Complt. ¶ 29). Since Tastefully Simple is the only entity alleged to have effected the "bump-ups," this claim is probably directed toward only Tastefully Simple (and, hence, has already been dismissed for improper venue). The Court does not see in the complaint (and plaintiff does not bother directing the Court to) any alleged conduct by Leopardo, Maciel or Davis that would constitute the "extreme and outrageous" conduct necessary to state a claim for intentional infliction of emotional distress under Minnesota law. *See Langeslag v. Kymn Inc.*,

664 N.W. 2d 860, 864 (Minn. 2003) ("We have cautioned that intentional infliction of emotional distress is 'sharply limited to cases involving particularly egregious facts'"). Accordingly, the Court dismisses without prejudice Count V against Leopardo, Maciel and Davis for failure to state a claim.

### 3. Gleich's claim for interference with contract

In Count II, Gleich asserts a claim for intentional interference with contractual relationship. To state a claim for tortious interference under Minnesota law, a plaintiff must allege (1) the existence of a contract; (2) about which the defendant(s) knew; (3) of which the defendants intentionally procured a breach without justification; and (4) that the plaintiff was injured as a direct result. *Dyrdal v. Golden Nuggets, Inc.*, 672 N.W. 2d 578, 587-588 (Minn. Ct. App. 2003), *aff'd* 689 N.W. 2d 779 (Minn. 2004). Here, plaintiff has failed to allege that defendants acted without justification. Accordingly, the Court dismisses without prejudice Count II against defendants Leopardo, Davis and Maciel.

### 4. Gleich's claim for civil conspiracy

In Count III, Gleich asserts a claim for civil conspiracy. The Supreme Court of Minnesota has explained that one cannot recover for conspiracy alone. *Harding v. Ohio Casualty Ins. Co. of Hamilton*, 41 N.W. 2d 818, 825 (Minn. 1950) ("Accurately speaking, there is no such thing as a civil action for conspiracy. . . . Allegations of conspiracy do not make wrongful what otherwise is not.") (internal citations omitted). Thus, under Minnesota law, one must plead that the defendants combined to accomplish either an unlawful purpose or a lawful purpose by an unlawful means. *Harding*, 41 N.W. 2d at 825. The Court does not see (nor does the plaintiff bother pointing out) any allegations of the requisite unlawful purpose or unlawful

means. Accordingly, the Court dismisses without prejudice plaintiff's Count III against defendants Leopardo, Davis and Maciel.

IV. **Conclusion**

For the reasons set forth above, the Court grants defendants' motion. The Court dismisses without prejudice all of plaintiff's claims against defendant Tastefully Simple. The Court dismisses without prejudice the John and Jane Doe and XYZ Corporation defendants. The Court also dismisses without prejudice all of plaintiff's claims against defendants Leopardo, Davis and Maciel. The Court grants plaintiff leave to file an amended complaint against defendants Leopardo, Davis and Maciel. To the extent Gleich is concerned about convenience, however, Gleich should file all of her claims in Douglas County, Minnesota. Should Gleich choose to file an amended complaint in this Court, plaintiff is granted 60 days to file her amended complaint.

ENTER:

*[signature: George M. Marovich]*
_____
George M. Marovich
United States District Judge

DATED: 12/02/05